**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 24, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

MAGDALENA GIRON,

      Plaintiff-Appellee,

v.

SUSANA CHAPARRO,

      Defendant-Appellant.

No. 05-2015
(D. N.M.)
(D.Ct. No. CIV-04-670 BB/WDS)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **LUCERO,** Circuit Judge, **BRORBY,** Senior Circuit Judge, and **McCONNELL**, Circuit Judge.

_____

Appellant Susana Chaparro, a state magistrate judge, appeals the district court's denial of her motion to dismiss the 42 U.S.C. § 1983 action against her based on the doctrine of absolute judicial immunity. Exercising our jurisdiction under 28 U.S.C. § 1291, we reverse and remand.

The following facts are uncontested. Judge Chaparro is a magistrate judge

_____

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

for the Doña Ana County court system in New Mexico. The parties generally agree that under New Mexico law Judge Chaparro possesses the authority to issue contempt citations or orders for disorderly behavior or breach of the peace tending to interrupt or disturb a judicial proceeding in progress before a magistrate or for disobedience of any lawful order or process of the court. *See* N.M. Stat. Ann. § 35-3-9 (1978). The Appellee, Magdalena Giron, is a contract employee with the Administrative Offices of the Courts of the State of New Mexico, for the purpose of providing interpreting services to the courts in Doña Ana County. On June 26, 2001, Judge Chaparro summoned Ms. Giron to her courtroom, where Judge Chaparro was presiding before two assistant district attorneys, a public defender, and a Spanish-speaking client. The reason for Ms. Giron's presence was to translate during the proceeding, which she failed to perform due to a misunderstanding on her part.

The judge became upset with Ms. Giron's failure to perform her contract services, after which Ms. Giron said they needed to talk to the chief clerk of the court and began to walk out of the courtroom. Despite the judge's order for Ms. Giron to return, she left the proceeding. The judge followed Ms. Giron to the clerk's office and again ordered Ms. Giron to return to the courtroom, but she refused. Judge Chaparro then ordered Ms. Giron to leave the courthouse, but she

refused. On the following day, two police officers arrested Mr. Giron at the courthouse, based on a warrant stemming from a contempt of court order to show cause issued by Judge Chaparro.

Ms. Giron brought a civil rights action under 42 U.S.C. § 1983 for violation of her First, Fourth, and Fourteenth Amendment rights, based in part on the judge holding her in contempt. Specifically, she claimed the contempt order arose from the judge's personal animus against her because (1) she, rather than the judge's sister, received the interpreter services contract for the court, and (2) she previously lodged grievances against the judge for what she described as a campaign of harassment which began the day she started her contract. She also contended the judge previously engaged in harassment, intimidation, and interference against her in an effort to constructively discharge her from her contract by making accusations in the presence of others that she falsified vouchers, performed incompetently, and failed to provide sufficient interpreter services to the court. She alleged that based on Judge Chaparro's wrongful actions and her fear of continued harassment and retaliation by her, she did not bid to renew her contract. In response, Judge Chaparro brought a motion to dismiss on grounds of (1) absolute judicial immunity for performing a judicial act of issuing a contempt order, and (2) failure to state a cause of action because Ms.

Giron failed to allege she was terminated from any position or lost other employment opportunities because of any statements made by Judge Chaparro.[1]

In considering Judge Chaparro's motion to dismiss, the district court determined the only question presented was the issue of absolute judicial immunity under the facts alleged in Ms. Giron's complaint.[2] The district court denied the motion to dismiss, determining Judge Chaparro was not entitled to absolute immunity as a matter of law because it was unclear whether the judge acted as an employer attempting to impose her will over a court employee or in a judicial capacity attempting to control the conduct of the proceeding in her courtroom. Judge Chaparro appeals the order, claiming the district court erroneously considered the "personal motives" of the judge "rather than looking at the nature of the act itself" and determining whether it is a function traditionally performed by a judge. Because the act of issuing a contempt citation is exclusively judicial in nature, she suggests any alleged motive associated with

---

[1] Ms. Giron incorrectly claims the only question presented to the district court in Judge Chaparro's motion to dismiss was absolute immunity.

[2] We note the district court did not explicitly address the other issue raised by Judge Chaparro in her motion to dismiss with respect to harassment and other related charges Ms. Giron made in her complaint against her. Because the district court did not address it, and Judge Chaparro did not raise or address that issue on appeal, we do not consider it here. *See Drake v. City of Ft. Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991); *Cunico v. Pueblo Sch. Dist.*, 917 F.2d 431, 444 (10th Cir. 1990).

-4-

the act is irrelevant, even if motivated by malice, corruption, or other improper intent.

We review *de novo* the district court's denial of a judge's motion to dismiss based on absolute judicial immunity. *See Malik v. Arapahoe Co. Dept. of Soc. Servs.*, 191 F.3d 1306, 1313 (10th Cir. 1999) (relying on *Kamplain v. Curry Co. Bd. of Comm'rs*, 159 F.3d 1248, 1250 (10th Cir. 1998)); *Gagan v. Norton*, 35 F.3d 1473, 1475 (10th Cir. 1994). In reviewing a district court's decision on a motion to dismiss for absolute immunity, we accept the allegations of the complaint as true. *See Gagan*, 35 F.3d at 1475. It is well-settled judges are generally "immune from a suit for money damages," *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (*per curiam*), and such immunity applies to actions brought under 42 U.S.C. § 1983 to recover for alleged deprivation of civil rights. *See Pierson v. Ray*, 386 U.S. 547, 554-55 (1967); *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000). The doctrine of absolute immunity ensures judges and judicial officers perform their duties vigorously and without fear of time-consuming, costly, "vindictive or ill-founded damage suits brought on account of action taken in the exercise of their official responsibilities." *See Smith v. Losee*, 485 F.2d 334, 341 (10th Cir. 1973) (quotation marks and citation omitted). Judges enjoy absolute judicial immunity even if "flawed by the commission of grave procedural errors"

*Whitesel*, 222 F.3d at 867 (quotation marks and citation omitted), and regardless of a judge's "motive or good faith," *Smith*, 485 F.2d at 342 (citations omitted), or whether "the judge is accused of acting maliciously and corruptly," *Pierson,* 386 U.S. at 554.

Two exceptions to judicial immunity exist. First, a judge is not immune from liability for non-judicial acts, which are acts not taken in the judge's judicial capacity. *See Mireles*, 502 U.S. at 11-12. Second, a judge is not immune from actions, though judicial in nature, taken "in the complete absence of all jurisdiction." *Id.* In determining the scope of a judge's jurisdiction, it "must be construed broadly where the issue is the immunity of the judge," *Stump v. Sparkman*, 435 U.S. 349, 356 (1978), and merely acting in excess of authority does not constitute an action in the "clear absence of all jurisdiction." *Id.* at 356-57 (quotation marks and citation omitted).

In this case, the parties generally rely on New Mexico Statutes Annotated § 35-3-9 (1978) for the proposition that Judge Chaparro has authority to issue contempt citations, which states:

> A magistrate has jurisdiction to punish for contempt only for disorderly behavior or breach of the peace tending to interrupt or disturb a judicial proceeding in progress before the magistrate or for disobedience of any lawful order or process of his court. No person

shall be punished for contempt of the magistrate court until given an opportunity to be heard in his defense. Any person convicted under this section may appeal to the district court in the same manner as in other criminal actions in the magistrate court.

N.M. Stat. Ann. § 35-3-9 (1978). The New Mexico Legislature also enacted the following general contempt statute: "It shall be within the power of each and every presiding officer of the several courts of this state, whether of record or not of record, to preserve order and decorum, and for that purpose to punish contempts by reprimand, arrest, fine or imprisonment ...." N.M. Stat. Ann. § 34-1-2 (1978).

In addition, the rules of civil and criminal procedure for magistrate courts promulgated by the New Mexico Supreme Court, and relied on by Judge Chaparro in her motion to dismiss, state:

A. Jurisdiction. A magistrate has jurisdiction to punish for contempt only for:

(1) disorderly behavior in the presence of the court or close enough to the court that it obstructs the administration of justice;

(2) misconduct of court officers in official transactions; [and]

(3) disobedience or resistance to any lawful order, rule or process of the court.

*See* N.M. R. Magis. Ct. RCP Rule 2-110(A)(1)-(3) *and* N.M. R. Magis. Ct. RCRP Rule 6-111(A)(1)-(3). The same rules further state notice of contempt may be

made orally by the judge in open court in the presence of the person in contempt, and that a "direct contempt" may be punished summarily if the judge, by written order, certifies to having seen or heard the conduct constituting the contempt and that it was committed in the presence of the court. *See* N.M. R. Magis. Ct. RCP Rule 2-110(B) & (C) *and* N.M. R. Magis. Ct. RCRP Rule 6-111(B) & (C). Under New Mexico case law, these rules take precedence over the legislature's enactment of § 35-3-9. *See State v. Jones*, 734 P.2d 243, 244-45 (N.M. Ct. App. 1987). Finally, in lieu of either legislation or rules on contempt, the New Mexico Supreme Court has held "[t]he power to punish for contempt is inherent in the courts," *Case v. State*, 709 P.2d 670, 671 (N.M. 1985); *State ex rel. Bliss v. Greenwood*, 315 P.2d 223, 227 (N.M. 1957), and "its exercise is the exercise of the highest form of judicial power," *Bliss*, 315 P.2d at 227.

Having reviewed the applicable law, we turn to Ms. Giron's contentions in support of the district court's decision. She claims Judge Chaparro is not entitled to absolute immunity because (1) her action was not a judicial act, but "an offensive weapon to vindicate personal objectives"; (2) part of the event occurred outside the courtroom in the clerk's office; (3) no formal proceeding was in progress in the courtroom, but rather it involved an informal administrative-type matter over which the judge presided in open court; (4) she was not a litigant

before the judge; and (5) the judge procedurally erred by failing to hold a hearing to show cause prior to issuing the contempt order and sentence.

First, we begin with the question of whether the act of issuing a contempt order is a judicial act. While a judge's vindictive motives in issuing a contempt order cannot be condoned, a judge's act with respect to the issuance of a contempt order nevertheless patently involves a judicial function which must be afforded the defense of absolute immunity. To hold otherwise would have a chilling effect on a judge's judicial acts, leaving the judge readily subject to suit in the course of performing such acts. *See Smith*, 485 F.2d at 340-41. While this circuit has not specifically identified a contempt order as a judicial act, our reasoning follows other circuit court decisions which have explicitly ruled contempt orders are judicial acts subject to absolute immunity,[3] as well as New Mexico law holding the judicial exercise of contempt power is an exercise of "the highest form of

---

[3] *See, e.g., Figueroa v. Blackburn*, 208 F.3d 435, 443 (3d Cir. 2000) (determining "[t]here can be little doubt that holding an individual in contempt is an act normally performed by a judge"); *Crooks v. Maynard*, 913 F.2d 699, 700 (9th Cir. 1990) (concluding a judge's contempt order, even against a non-litigant, is clearly a judicial act); *Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir. 1985) (stating "[t]here is no question" the judge's acts, including contempt sentence, are "judicial acts"); *Patten v. Glaser*, 771 F.2d 1178, 1179 (8th Cir. 1985) (*per curiam*) (affirming decision that judge who issued contempt sentence performed function normally performed by a judge acting in his judicial capacity and therefore, it constituted a judicial act); *Dean v. Shirer*, 547 F.2d 227, 230 (4th Cir. 1976) (determining judge who imposed a contempt sanction performed a judicial act).

judicial power," *Bliss*, 315 P.2d at 227, and the Supreme Court's long-standing announcement that the power to punish for contempt is inherent in all courts. *See Ex parte Robinson*, 86 U.S. (19 Wall.) 505, 510 (1873).

Having held the act of issuing a contempt order constitutes a judicial act, we also conclude the state magistrate judge in this case possessed jurisdiction for the purpose of issuing a contempt order. In so doing, we reject Ms. Giron's specific contentions the judge lacked jurisdiction to cite her for contempt, including her contention absolute immunity cannot apply here because it involved an informal or administrative proceeding rather than a formal hearing before the judge. We are not persuaded that a contempt order arising from events occurring at a proceeding over which a judge presides before counsel in open court and seeks the services of a court interpreter for a Spanish-speaking client is a proceeding over which the judge allegedly lacks contempt power. Regardless of the characterization by Ms. Giron, the circumstances suggest the informality of the proceeding did not change the judicial nature of the act itself, and because the judge generally possessed jurisdiction to impose contempt sanctions for disorderly conduct or disobedience of her orders directed to individuals before her in her judicial capacity, her action was not taken "in complete absence of all jurisdiction."

Similarly, because Ms. Giron clearly disobeyed the judge's verbal orders to return to the courtroom and perform interpretive services, and her disobedience of such orders obviously occurred "in the presence of the court" (*vis-a-vis* the judge) or, alternatively, "close enough to the court that it obstruct[ed] the administration of justice," Judge Chaparro had jurisdiction to punish Ms. Giron's disobedience of her orders. *See* N.M. Stat. Ann. § 35-3-9 (1978); N.M. R. Magis. Ct. RCP Rule 2-110(A)(1) & (3). Thus, when the judge ordered Ms. Giron in court to come back and act as an interpreter, and then in the clerk's office again ordered her to return to the courtroom to perform her services, she possessed jurisdiction in both situations to punish Ms. Giron's refusal with contempt. *See, e.g.*, *Crooks*, 913 F.2d at 701 (rejecting contention that power to sanction for contempt is valid only when the contempt is committed in the immediate view and presence of the court or the judge at chambers and, instead, determining the term "court" refers "to the person of the judge, acting in his official capacity, wherever he may be"). *See, e.g., Dean*, 547 F.2d at 231 (holding judge who issued contempt citation over attorney who made statements outside courtroom immediately after trial and while court was out of session retained subject-matter jurisdiction over criminal action).

We also reject Ms. Giron's contention absolute immunity cannot apply

because she was an employee of the court and not a litigant before the judge. The fact Judge Chaparro held one of the court's own contract employees in contempt does not alter either the judicial nature of the act or her jurisdiction to generally issue such contempt orders, and thus, the contempt order was not taken "in the complete absence of all jurisdiction." *See Crooks*, 913 F.2d at 699, *and Crooks v. Maynard*, 820 F.2d 329 (9th Cir. 1987) (same case) (concluding a judge's decision to hold two court employees, who were not litigants, in contempt of court is clearly a judicial act and one which a district court judge has sufficient jurisdiction to render). Moreover, in this case, the New Mexico rules for magistrates explicitly give judges jurisdiction to punish misconduct of court officers in official transactions for contempt, and, arguably, Ms. Giron could be considered a court officer involved in an official transaction at the time the judge asked her to lend her interpretive services in court and when she repeatedly failed to obey the judge's order to return to the courtroom to provide those services. *See* N.M. R. Magis. Ct. RCP Rule 2-110(A)(2).

Finally, while Ms. Giron argues the judge erred by failing to hold a contempt hearing, we have previously held judges enjoy absolute judicial immunity even if "flawed by the commission of grave procedural errors." *Whitesel*, 222 F.3d at 867 (quotation marks and citation omitted). In this case, the

procedural error does not alter the nature of the act from being a judicial one over which the judge had jurisdiction, and therefore, it was not taken "in complete absence of all jurisdiction." *See, e.g., Figueroa*, 208 F.3d at 443 (holding order of contempt sentence, without statutory opportunity for appeal, was in error but nevertheless involved a judicial act subject to judicial immunity); *O'Neil v. City of Lake Oswego*, 642 F.2d 367, 368-70 (9th Cir. 1981) (order of contempt without requisite supporting affidavit was granted in "excess of jurisdiction," but nonetheless the judge did not act in "clear absence of all jurisdiction" and therefore enjoyed judicial immunity). Moreover, in New Mexico, the applicable rules for magistrate judges provide for a "direct contempt" which may be punished summarily if the judge certifies to having seen or heard the conduct constituting contempt committed in the presence of the court. N.M. R. Magis. Ct. RCP Rule 2-110(C). Thus, no hearing on an order to show cause would be necessary in such a circumstance. *See In re Oliver*, 333 U.S. 257, 275 (1948) (limiting use of summary contempt to "charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent demoralization of the court's authority before the public").

For these reasons, we conclude Judge Chaparro performed a judicial act with the requisite jurisdictional authority to cite Ms. Giron with contempt, regardless of any alleged personal motives or procedural errors.  Accordingly, we conclude Judge Chaparro is entitled to absolute judicial immunity and **REVERSE** and **REMAND** this case to the district court for entry of judgment in favor of the Appellee, Judge Susana Chaparro, on her motion to dismiss, in accordance with this decision.


**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge

-14-